I call case number 516-0520, Vick v. Wylie and Allen. Counselor Ritter. Good morning, your honors. My name is Alfred Sanders and I represent the defendants across the plaintiffs in this case, six deputy sheriffs. This case was decided in cross-assembly judgment by agreement of the parties. There were no real facts in dispute in this. These were two deck actions and we are not, so this thing doesn't become more complicated than it needs to be. We're not appealing any of the decisions of the trial court passed down with regard to deck action requests from the county to the sheriff. We are requesting the court overrule the trial judge in one of our prayers will be on our request for deck action. And that is a declaration that these deputy sheriffs may legally be deputy sheriffs without training by the Illinois Training Standards Board as long as they remain dispatchers. That is that limit. And the reason this declaration is important is because these deputy sheriffs are members of a union. I think they're the Fraternal Order of Police Union. And their contract specifically prohibited the county from laying off sworn deputy dispatchers for the purpose of hiring civilian dispatchers. So they would not be able to do this as a discretionary call under the terms of their contract. However, the position the county took when they first filed this was that they were laying these people off not as a discretionary call but as a matter of law because the deputy sheriffs must have training by the Illinois Training Standards Board in order to keep their position as sworn deputy sheriffs. So we're simply asking for a declaration that that's not correct, that a deputy sheriff does not have in and of themselves a requirement that they go through training by the Illinois Training Standards Board. Now, it is important to understand that our statutes, the county code, requires a sheriff or allows a sheriff to appoint one or more deputies not exceeding the number allowed by the county board of his or her county. And that no person that's ever been classified as a conscientious detector may be appointed as a deputy sheriff. That is the only restriction for a general deputy sheriff, and it's found in 55 ILCS 5-3-6008. 6011 defines special deputies, which are process sheriffs only. 6012 defines auxiliary deputies, which I don't even know if anybody has them anymore. It's almost like the days we had posses and stuff, and you needed to deputize some people. But that statute does define them, and they are required to have special training. But the 6008 deputies, there's nothing in the statute requiring any specific training for them as a deputy sheriff. However, the Illinois Police Training Act kicks in in most instances, to be honest, the vast majority. That act defines a, quote, law enforcement officer as any police officer of a local government agency who is primarily responsible for prevention, for detection of crime, and the enforcement of the criminal code of traffic for highway laws of the state and any political subdivision of the state. Our people are not in the crime provision. By the time they get the 911 call, the crime's already been committed. They're not detectives. They don't patrol highways. They don't carry guns or interact with the public. To have them go through regular 40 hours of police training would be a complete waste of time and money. My people sit in a room with a telephone and a radio, and that's all they do. They do not meet any of the definitions of law enforcement officer by the Training and Standards Board or the Police Training Act. However, there's nothing preventing them from still being deputy sheriffs, unless they start taking on the primary responsibilities of those types of things listed in the IOTSB standards. So that's been our position all along, that there was no legal impediment to these people remaining deputy sheriffs. As a matter of fact, a sheriff could appoint a secretary as a deputy sheriff. But if she's going to go out and get in a patrol car or carry a weapon and interact with the public or guard the jail or the courthouse, then she's going to have to have 40 hours of training. But as long as she sits at a desk with a typewriter or a telephone or a heat or whatever, they do not have to have this special training. So the reason this is important to my clients is that deputy sheriffs are entitled to participate in the pension fund known as SLEP, S-L-E-P. Civilian dispatchers or civilians, period, must belong to the IMRF fund. And the difference for the county is the amount the county has to contribute to that pension. So the county's contribution is higher for SLEP members than it is for IMRF members. So it certainly appears to us that what the county did was terminate these people. They rehired the same people. My people didn't lose their jobs. They've just been rehired as civilians. So their jobs are still there, but the amount of their pension is going to be different. And the county was trying to do this retroactively. We had a person that had this pension for 19 years. So the county said at the beginning that, well, they can't be deputies as a matter of law. We're saying they can't. Given the duties that they have, as long as those duties remain as dispatchers, there's absolutely nothing that prohibits them from being deputy sheriffs and thus participants in SLEP. Now, if this court rules in our favor and gives us that declaration, we're not asking you to reinstate anybody. That's not within your authority. All this does is kick in the ability for the union to then step forward and say, tell the county, we're filing a grievance. You have breached the contract. You have fired these people who were sworn deputy dispatchers for the purpose of simply rehiring them as civilians. So this isn't the end of this if you rule in our favor. The union will still have to take that up, and I do not represent the union. And the reason I'm standing here instead of the union attorney is because they were told this was being done as a matter of law, not as a matter of discretion. Now, the county seems to have changed their position on some of this later in the case. So I'll let Mr. Crosswood here tell you what the county's position is today. I don't know. But at one time they seemed to admit that they could be deputies, but they just couldn't belong to SLEP. Well, as long as they're civilians, they can't belong to SLEP. We don't deny that. We deny that. What we deny is their ability to change them to a status where they cannot be part of SLEP because it violates the union contract. But more importantly, all we're asking you to do is take a look at this as a matter of law and tell us whether or not a person who's been sworn in as a deputy sheriff, as a dispatcher, that does not have the primary responsibilities listed in the Police Training Act, whether they may stay on the job as a deputy sheriff. That's all we're asking this court for a declaration of. Nothing in question. Thank you. Thank you. May it please the Court. Counsel, my name is Don Crosser. I'm one of the attorneys representing the County of Williamson, the Sheriff Nick, and the parties that are the appellees in this matter. I guess my beginning remark is that this case is not about deputy sheriffs, as counsel just told you about. The findings of the trial court were that as of December 2014, the parties that Mr. Sanders represents were no longer deputy sheriffs. They were, in fact, sworn civilians telecommunicators. He hasn't appealed that, as he made very clearly today. He has his brief. There's no issue about that. Now, what was this case about at the trial court? Basically, we were concerned about whether or not these people that had formerly been sworn deputies but were no longer sworn deputies, did they qualify for the sheriff's law enforcement pension program as well. As Mr. Sanders says, that's a special program designed for a particular class of employees. It doesn't protect clerks. It doesn't protect secretaries. It doesn't create a right, even if they're in the sheriff's department, to this entitlement. It's for law enforcement personnel. Now, what happened in this case is that Mr. Sanders now adds to this by saying, well, this is about a contract. I'm going to begin by saying that there's no collective bargaining agreement in this record ever presented and has nothing to do with this case. Whatever theory he might have about that is entirely outside this record. When he says that his employees were laid off, that's just simply not true. Their status was changed, and Judge Breyer agreed, and he's not appealing that. So they weren't laid off. They weren't tarnished. They weren't any of those things. They were reassigned to a position of being sworn civilian dispatchers or telecommunicators. And the question is, does that qualify under the sheriff's law enforcement pension program for that special category? How is the real issue in this case? Now, I understand Mr. Sanders' argument today is to say, my people were law enforcement officers, but they're not law enforcement officers because they can't do anything to enforce the law. They don't have any of the required training of a deputy. But that's all right, says Mr. Sanders. They still are law enforcement officers. It's a nonsensical position. Either they are law enforcement officers and the statute says they have to have training to comply with them, or they're not. Secretaries don't require any training. Dispatchers don't require any training. But if they're going to be law enforcement officers, they must have the training of a law enforcement officer. Now, I agree with Mr. Sanders that by doing the duties of dispatching people to and from accident scenes and crime scenes and the like, that they don't do investigations and the like, and therefore they don't need that. In fact, that's what the county concluded. There was no need to give them the status of being a deputy sheriff because they weren't being used in the capacity of law enforcement officers. He's right. He's absolutely right. There's no need for that training. But in the absence of that training, they're not law enforcement officers in their own little law. But Judge Blyer said if they got that training, and if they were sworn as deputies, they would qualify for select eligibility. That is entirely consistent with the decisions of the state of Illinois. If we look at the Rose versus Lake County decision, the court said in that case, these people, although assigned duties, they're not law enforcement duties. They were sworn deputies. They have the capacity to make arrests. In times of crisis, in times of distress, they could be ordered out by the sheriff not to do things. And in that context, because they were qualified to be law enforcement officers in that regard, that they then qualified for select. What he wants you to do in this case is to say they don't have to be qualified to enforce the law. They still get to be part of SLEP. It's an unsensical position. Now, when this court in this fact decided its decision of Gibbs versus Madison County, it was not on the issue of SLEP. But there's language in that decision in 2000 that says, in fact, that if you are a sworn deputy, if you are qualified as a sworn deputy, you can be assigned anything the sheriff wants to do, and you still qualify for SLEP. We have no argument with that position. That makes perfect sense. It's consistent with Illinois law. The sheriff doesn't need these people in that capacity, but he has them in that availability if an emergency should arise. In this case, the county decided they did not need these people to be backup law enforcement officers available to provide services. And when they no longer needed that, when the sheriff made that determination and assigned them the role of being civilian dispatchers, they didn't change their duties, but they changed their status. They were no longer law enforcement officers. Now, he's right. At no time had the county ever given them the training that we think that they should have had. And that's, in fact, what initiated this whole change in status. As the law enforcement standards bureau tells the sheriff, where are these people listed as deputies when they're not trained? The statute says that they must be trained within six months prior or they forfeit their jobs as a law enforcement officer. That's 55 ILCS 5-3-606, I think it is. In any event, it's in my brief. The point of it is, is that training is inherent and qualification is inherent in being a deputy. I guess the final analysis of Mr. Sanders' argument is that we'll have deputies who do law enforcement and can do the duties of the sheriff, which, by the way, that's what the oath says that they will do. They will perform the duties of the sheriff. But there will be another class of deputy that can't do anything in regard to law enforcement. It's just really a reach that doesn't support itself, either in the case law or in the decisions of the court or the statutes. It just doesn't make sense. All we have here today is a fighting with Judge Blyer that as of December of 2014, these people were no longer deputies. They were not sworn deputies after that point. They could not enforce the law, and Mr. Sanders agrees. The Judge Blyer says, if the county chose to, it could swear these people in as deputies today and give them the training that they're required to have as law enforcement officers, and they would qualify for slum. The county hasn't chosen that within its discretion. Mr. Sanders has appealed that decision. In that context, it is very clear that these people have no rights violated. There's no declaratory judgment. I think even the very fact that we're here today is somewhat confusing. They asked for a fighting, but there was nothing that would impede or prohibit them from being sworn as deputies and to serve that capacity while assigned duties as dispatchers. That's what Judge Blyer said. That's what the county has said always. We could do this just like they did in Roche and like this court decided to do, but they're not required to do the same. In the final analysis, Your Honors, I think the appellants have failed to meet their burden to show you a reversible error. They cite no authority. The argument that they have is nonsensical to say that they're both law enforcement officers, but they can't enforce the law. It doesn't make any sense. This pension plan is designed to protect people who are law enforcement officers under the sheriff's employment. They're not so engaged here. They don't qualify. If there are any questions, I'd be happy to address them. Thank you, Your Honors. Thank you. Your Honors, just to clarify, we have never claimed that our people have ever been law enforcement officers. They never have been because the only place law enforcement officer is defined is in the Police Training Act that I read to you just a moment ago. The county code does not define a law enforcement officer, nor does the pension code. The pension code only requires that you be a deputy sheriff to participate in SLEP. So the question is, can they be deputy sheriffs? But their primary responsibility has never been crime detection, prevention, patrol. They have never been law enforcement officers as defined by the Police Training Act. The problem is it doesn't require you to be one to participate in SLEP. It doesn't require you to be one to be a deputy sheriff. And this is where they're mixing apples and oranges by mixing the pension code with the Police Training Act with the county code. The only place law enforcement officer is defined is in the Police Training Act. Is it possible that the sheriff could ask one of these people to come help out with some duties? Absolutely, they could. Does that require them? Does that kick in the provisions of the Standards and Training Board? No, because that statute clearly says it must be their primary responsibility. So if they're able to come over for a few minutes and help somebody out at the courthouse, court security, secure someone or whatever, that's fine. It's still not their primary responsibility to do that. And certainly the Police Training Act couldn't have said any police officer of a local government who in any way engages in the prevention, detection of crime. Instead, it says who is primarily responsible for that. So yes, they have these people available, and the problem the county's done now is they probably can't pull in a civilian dispatcher to help them, you know, hold somebody down if somebody comes and goes crazy in the courthouse because they're civilians. So the county's kind of cut their own throat here by doing this. But at the same time, the question is, is this a legal call or was it a discretionary call? And he seems to admit that, well, they didn't need them anymore, so they changed their stats. And that's all we're asking this court to do is to say they didn't have to do this because if they didn't have to do it, it was a discretionary call. Then I can turn this back over to the union reps and they can make their grievance under the contract because the contract seems to say they can't do it, period. Now, Mr. Prosser said that's not in the record. My supplement to the summary judgment begins on page 139 of the record, and that union contract is attached in Exhibit 10 to that. So it most definitely is in the record. So this was brought up to Judge Blier. I think he really struggled with this, but at the end of the day, the only question is, can they legally be deputy sheriffs without going through this training? And the answer seems to clearly be yes. If they can, then the union gets to take over and decide whether they were in breach of the contract. That's all we're asking to do is open the door for them to come in and say, can the county make this discretionary call under the terms they agreed to with the union contract? So we're not asking you to actually order the county to put them back. That will be up to the union and the county to work that out between themselves if you rule in our favor. Thank you. Thank you, counsel. We'll take this matter under advisement and make a decision in due time.